# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

          Case No.  09-30075

DENNIS BOLZE
d/b/a CENTURION ASSET MANAGEMENT
d/b/a ADVANCED TRADING SERVICES

       Debtor


       G. WAYNE WALLS, TRUSTEE

          Plaintiff

           v.                                    Adv. Proc. No.  09-3035

       CENTURION ASSET MANAGEMENT, INC.
       and ADVANCED TRADING SERVICES, INC.

          Defendants


## MEMORANDUM ON
## REQUEST TO ENTER DEFAULT


**APPEARANCES:**    BAILEY & BAILEY, PLLC
                       Robert M. Bailey, Esq.
                       Post Office Box 2189
                       Knoxville, Tennessee  37901
                       Attorneys for Plaintiff, G. Wayne Walls, Trustee

                 Centurion Asset Management, Inc.
                  935 Campbell Lead Road
                  Gatlinburg, Tennessee  37739

                  101 Convention Drive
                  Suite 701
                  Las Vegas, Nevada  89109
                  Defendant

Advanced Trading Services, Inc.
935 Campbell Lead Road
Gatlinburg, Tennessee  37739

101 Convention Drive
Suite 701
Las Vegas, Nevada  89109
Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court on the Complaint for Substantive Consolidation of Non-Debtor Entities (Complaint) filed by the Plaintiff, G. Wayne Walls, Trustee, on March 26, 2009, seeking to substantively consolidate the assets and liabilities of the Defendants, Centurion Asset Management, Inc. and Advanced Trading Services, Inc., with the Chapter 7 bankruptcy estate of the Debtor, Dennis Bolze. The Defendants did not file responsive pleadings or otherwise appear, and on May 7, 2009, the Plaintiff filed a Request to Enter Default (Motion for Default Judgment), which the court set for an evidentiary hearing by an Order entered on May 12, 2009.

The evidentiary hearing on the Motion for Default Judgment was held on July 6, 2009, and, again, neither of the Defendants appeared. The record before the court consists of the testimony of the Plaintiff and thirty-four exhibits introduced into evidence, including declarations executed under penalty of perjury by Michael Tallarico, a senior Futures Trading Investigator with the Commodity Futures Trading Commission, and Michael Potter, a former employee of Nevada Corporate Headquarters, Inc.

Succinctly stated, the Plaintiff's action is grounded upon his contention that the Debtor "was engaged in a Ponzi scheme and was using the [Defendants] as conduit entities to transfer money to himself and to investors." COMPL. at ¶ 9.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O) (2006).

I

On November 1, 2001, the Debtor, Dennis Bolze, incorporated Advanced Trading Services, Inc. under the laws of the State of Nevada utilizing the services of a company known as Nevada

Corporate Headquarters, Inc., which served as the Incorporator and Registered Agent domiciled in the State of Nevada.[1] *See* COLL. EX. 1. Michael Potter, a former employee of the Incorporator, was listed as a Director, as well as President, Secretary, and Treasurer in the incorporation documents filed with the State of Nevada; however, he was a temporary officer and not involved in the company's business transactions or day-to-day operations.[2] *See* COLL. EX. 1; EX. 9 (POTTER DECL.) at ¶¶ 2, 4. Instead, Advanced Trading Services, Inc.'s business affairs were controlled exclusively by the Debtor, who consistently held himself out as the owner and vice president of the company and was custodian of the stock ledger, as per the Stock Ledger Statement dated November 12, 2001. *See* COLL. EX. 1; COLL. EX. 16; COLL. EX. 17. Advanced Trading Services, Inc. did not operate out of a physical office in Nevada; instead, it was operated by the Debtor from his residences first at 1656 Cardinal Drive, Gatlinburg, Tennessee, and, more recently, at 935 Campbell Lead Road, Gatlinburg, Tennessee (Campbell Lead Road Property). Advanced Trading Services, Inc. did not file any federal tax returns under its tax identification number, nor did it register in any capacity with the Commodity Futures Trading Commission. *See* EX. 4; EX. 6 (TALLARICO DECL..) at ¶ 11.

Similarly, the Debtor incorporated Centurion Asset Management, Inc., also as a Nevada corporation, on February 13, 2003, with Nevada Corporate Headquarters, Inc. as Incorporator and once again listed Mr. Potter as a temporary officer and director even though he was not involved in

---

[1] Under Nevada law, every company registered with the Nevada Secretary of State is required to have a registered agent domiciled within the State of Nevada. Nevada Corporate Headquarters, Inc. provided registered agent service and offered a "nominee service" for the administrative convenience of its customers, which provided for the submission of a temporary nominee's name on the List of Officers and Directors submitted to the Nevada Secretary of State. The nominee would serve for a brief period of time, thirty to forty-five days, to provide the company's shareholders time to select a permanent board of directors, after which the board would select permanent officers of the company. *See* EX. 9 (POTTER DECL.) at ¶¶ 3,4.

[2] *See supra* n.1.

the business transactions of the company. *See* COLL. EX. 2; EX. 9 (POTTER DECL.) at ¶¶ 2, 5-6, 12. The Debtor conducted all business affairs of Centurion Asset Management, Inc., which did not have a physical office in Nevada and, as with Advanced Trading Services, Inc., operated solely from the Debtor's residential addresses. Through a Resolution of the Board of Directors on March 21, 2003, executed by Mr. Potter, the Debtor, who held the stock ledger of the corporation, was appointed President, Secretary, Treasurer, and Director of Centurion Asset Management, Inc., and Mr. Potter executed a Resignation of Officers. *See* COLL. EX. 2. Centurion Asset Management, Inc. did not file any federal tax returns under its tax identification number, nor did it register in any capacity with the Commodity Futures Trading Commission. *See* EX. 4; EX. 6 (TALLARICO DECL.) at ¶ 11.[3]

An action was brought in the United States District Court for the Eastern District of Tennessee against the Debtor, Centurion Asset Management, Inc., and Advanced Trading Services, Inc. by the Commodity Futures Trading Commission on March 3, 2009, Civil Action No. 3:09-CV-88, alleging violations of the Commodity Exchange Act, fraud, failure to register as a commodity pool operator, failure to register as an associated person of a commodity pool operator, and for unjust enrichment. *See* EX. 4; EX. 5. In its Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act, the Commodity Futures Trading Commission sought the following relief: (1) a permanent injunction against the Debtor, Centurion Asset Management, Inc., and Advanced Trading Services, Inc. from further violations of the Commodity Exchange Act and from engaging in any activity related to trading any commodity;

---

[3] The Debtor was also involved in the incorporation of Trading Rooms Technologies, Inc., in the State of Nevada on December 30, 2005, once more through Nevada Corporate Headquarters, Inc. *See* COLL. EX. 3. As with Advanced Trading Services, Inc. and Centurion Asset Management, Inc., the Debtor held himself out as having an ownership interest in Trading Rooms Technologies, Inc. *See, e.g.,* COLL. EX. 24.

(2) a restraining order preventing the defendants from disposing in any way of their books and records; (3) an order granting the Commodity Futures Trading Commission access to the defendants' books and records, ordering an accounting of all accounts associated with the defendants, requiring disgorgement of all benefits received by the defendants, requiring the defendants to pay restitution to the pool participants, and rescinding all contracts between the defendants and any investors; and (4) assessment of civil damages and all costs. *See* Ex. 4. The court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, that a Restraining Order was issued in this action by the district court on March 4, 2009, which was extended for ten days by an Order entered on March 17, 2009. On April 1, 2009, the district court entered an Order of Preliminary Injunction and Other Ancillary Relief Against Centurion Asset Management, Inc. and Advanced Trading Services, Inc. The Preliminary Injunction remains in effect.

The Involuntary Petition commencing the Debtor's Chapter 7 bankruptcy case was filed on January 9, 2009, by Bill Allen, II, Ray Whaley, and Donnie Lay (Petitioning Creditors), and the Order for Relief was entered by default on February 5, 2009. The Plaintiff was appointed trustee pursuant to an Order entered on January 15, 2009, granting the Motion to Appoint Interim Trustee filed by the Petitioning Creditors on January 12, 2009, and has continued to serve in that capacity subsequent to the entry of the Order for Relief. The Trustee filed the Complaint initiating this adversary proceeding on March 26, 2009, seeking an order finding that Centurion Asset Management, Inc. and Advanced Trading Services, Inc. are alter egos and instrumentalities of the Debtor, that any and all assets of those corporations should be considered consolidated with all assets and liabilities of the Debtor in his bankruptcy case, and that the involuntary bankruptcy case commenced on January 9, 2009, and subsequent Order for Relief entered on February 5, 2009, also

6

be considered to have been entered against Centurion Asset Management, Inc. and Advanced Trading Services, Inc. As discussed, the Defendants have not appeared, and on May 7, 2009, the Plaintiff filed the pending Motion for Default Judgment.

## II

"Substantive consolidation in bankruptcy is a process by which the assets and liabilities of different entities are consolidated and treated as a single entity. The consolidated assets create a single fund from which all of the claims against the consolidated debtors are satisfied." *Bli Farms v. GreenStone Farm Credit Servs., FCLA (In re Bli Farms)*, 312 B.R. 606, 620 (E.D. Mich. 2004). "Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expenses necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors." *First Nat'l Bank v. Raforth (In re Baker & Getty Fin. Servs.)*, 974 F.2d 712, 720 (6th Cir. 1992). "It treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors [and non-debtors] morph to claims against the consolidated survivor." *In re Owens Corning*, 419 F.3d 195, 205, 208 n.13 (3d Cir. 2005). Bankruptcy courts have the authority to substantively consolidate assets of a debtor with those of a non-debtor corporation under 11 U.S.C. § 105(a) (2006), to be used sparingly and when equity demands. *Simon v. New Ctr. Hosp. (In re New Ctr. Hosp.)*, 187 B.R. 560, 567 (E.D. Mich. 2005).

"Implicit in [the] decision [to substantively consolidate] is the conclusion that the benefit – protection of the possible realization of any recovery for the majority of unsecured creditors –

7

outweighs the potential harm to any particular creditor." *In re Am. HomePatient, Inc.*, 298 B.R. 152, 165-66 (Bankr. M.D. Tenn. 2003). In order to substantively consolidate entities, the proponent must demonstrate that "(i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." *Owens Corning*, 419 F.3d at 211. The court's analysis is highly fact-specific, and "[a] determination of whether the corporations in question are alter egos of one another is critical[.]" *New Ctr. Hosp.*, 187 B.R. at 568.

In Tennessee, there is a presumption that corporations are distinct legal entities, wholly separate from their officers, directors, and shareholders. *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). However, "[i]n an appropriate case and in furtherance of the ends of justice, the separate identity of the corporation may be discarded and the individual or individuals owning all its stock and assets will be treated as identical to the corporation." *VP Bldgs., Inc. v. Polygon Group, Inc.*, 2002 WL 15634, at *4, 2002 Tenn. App. LEXIS 11, at *11 (Tenn. Ct. App. Jan. 8, 2002). The corporate veil will be pierced, and the corporate entity will be disregarded upon a showing that the corporation is a "sham" or "dummy" organization, or such action is necessary to accomplish justice. *Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995). This principle is to be applied with "great caution and not precipitately" in light of the assumption of corporate separateness, and the party seeking to pierce the corporate veil bears the burden of proof in order to justify such action, and "usually a combination of factors is present in a particular case and is relied upon to resolve the issue." *Schlater*, 833 S.W.2d at 925. These factors include

8

>   (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; (11) the failure to maintain arms length relationships among entities.

*Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984) (citations omitted).

The Plaintiff contends and the court agrees that through the following actions, as evidenced by documentation contained in Collective Exhibits 18, 19, 20, 23, 24, 26, 27, and 28, the Debtor operated both Advanced Trading Services, Inc. and Centurion Asset Management, Inc. as his alter-egos by: (1) interchangeably using his name individually on applications and other documents as the owner of assets titled to both corporations; (2) commingling his personal funds with those of the two corporations, using the commingled funds to pay personal bills and make personal investments in Trading Rooms Technologies, Inc., Urban Classic Cabinetry & Design, Inc., Spirit Developers, LLC, and Smoky Mountain Estates Properties, Inc., among others; (3) using his personal residence as the business address for both corporations and conducting all business from that address; (4) using Centurion Asset Management, Inc. as an instrumentality to further his illegal Ponzi scheme;[4] and (5) failing to keep separate the business transactions and dealings of both

---

[4] A Criminal Complaint was issued against the Debtor out of the United States District Court for the Eastern District of Tennessee on March 3, 2009, charging the Debtor with wire fraud and money laundering. *See* Ex. 13. The six-page Affidavit of Special Agent Kevin McCord signed by Kevin McCord, a Special Agent with the Criminal Investigations Division of the Internal Revenue Service, also dated March 3, 2009, details the charges against the Debtor giving rise to the issuance of the Criminal Complaint, including investment fraud schemes. Ex. 13. The Debtor, who remains in the custody of the United States Marshal, was indicted on July 21, 2009, under counts alleging wire fraud and money laundering.

companies with his own and those of Spirit Developers, LLC and Smoky Mountain Estates Properties, Inc.

At trial, the Plaintiff testified that in his investigation, he has been unable to fully separate the assets and liabilities of the Debtor from those of Advanced Trading Services, Inc. and Centurion Asset Management, Inc. The record reflects that these difficulties arise due to the continued overlapping and blending of these companies' financial transactions with the financial transactions of the Debtor, as well as the commingling of monies received from and by both corporations. As proof that the assets of the Debtor, Advanced Trading Services, Inc., and Centurion Asset Management, Inc. have been commingled, the Plaintiff subpoenaed and analyzed bank records from the following three accounts with Bank of America, summarizing the activity in and out of those accounts from January 2007 to January 2009: (1) account ending in 2127 in the name of Advanced Trading Services, Inc. (ATS BOA Account 2127); (2) account ending in 6196 in the name of Advanced Trading Services, Inc. (ATS BOA Account 6196); and (3) account ending in 1687 in the name of Centurion Asset Management, Inc. (CAM BOA Account). COLL. EX. 18; COLL. EX. 19; COLL. EX. 20. The Plaintiff additionally received records from BankEast for an account in the name of Advanced Trading Services, Inc. ending in 2726 for October 9, 2008, through December 15, 2008 (ATS BankEast Account). COLL. EX. 21.

As established by the Plaintiff's proof, the bulk of the money paid into the ATS BOA Account 2127 was received through 125 transfers, totaling $4,484,300.00, from the CAM BOA Account, which included funds sent in by investors. COLL. EX. 18. Monies were also transferred into this account from Advanced Trading Services, Inc. as follows: four transfers totaling $5,228.00

from the ATS BOA Account 6196, and ten transfers totaling $1,001,000.00 from other nondescript Advanced Trading Services, Inc. bank accounts. COLL. EX. 18. Additionally, three transfers totaling $158,000.00 were received from personal accounts the Debtor maintained in his name with Tennessee State Bank and First Tennessee Bank, one transfer of $45,000.00 was received from an account with First Tennessee Bank in Kathleen Bolze's name, and ten transfers totaling $279,760.00 held in a Man Financial account located in First Tennessee Bank were credited to the ATS BOA Account 2127. COLL. EX. 18.

The summary of outgoing payments from the commingled funds contained in the ATS BOA Account 2127 establishes that seventy-one transfers, totaling $892,000.00, were made directly to the Debtor and Kathleen Bolze, and an additional 136 transfers, totaling $237,764.27, were paid to Greg Kauffman, the Debtor's step-son, and Angela and Valerie Kauffman, the Debtor's step-daughters. COLL. EX. 18. An additional thirty-eight transfers totaling $566,547.37, thirty-three transfers totaling $651,790.00, and one transfer of $100,000.00 were made to Spirit Developers, LLC, Trading Room Technologies, and Urban Classic Cabinetry, respectively, three companies in which the Debtor was investing personally. COLL. EX. 18. Also paid from the ATS BOA Account 2127 were four transfers totaling $68,000.00 to Robert Warren, a Centurion Asset Management, Inc. investor, who had requested his money be returned. COLL. EX. 18.

With respect to the ATS BOA Account 6196, the Plaintiff established that there were fifty-five transfers to this account, totaling $536,314.00, from the ATS BOA Account 2127 and eighteen transfers, totaling $277,500.00, from the CAM BOA Account. COLL. EX. 19. Several credit cards were paid out of this ATS BOA Account 6196, and while the Plaintiff was unable to

11

determine if they were personal or business bank cards, the records indicate the following payments: (1) eighteen payments totaling $35,162.09 to check card ending in 2802; (2) twenty-one payments totaling $27,784.53 were made to a check card ending in 7634; (3) sixteen payments totaling $30,756.46 were made to a check card ending in 5768; and (4) twenty-four payments totaling $39,215.43 to a check card ending in 1771. COLL. EX. 19. Additionally, one transfer of $125,000.00 was made to Smoky Mountain Estates Properties, another company in which the Debtor invested personally,[5] and one personal donation in the amount of $25,000.00 was made to the University of Tennessee.[6] COLL. EX. 19. The Plaintiff also testified to his belief that this account funded much of the construction work for the Debtor's Campbell Lead Road Property.

Similarly, with respect to the CAM BOA Account, the Plaintiff established that approximately $8,044,355.00 was received from investors, while an additional $1,820,050.00 was received through thirty-nine transfers from ATS BOA Account 2127, and $231,600.00 was received from eight transfers from the ATS BOA Account 6196. COLL. EX. 20. Out of this account, approximately $6,540,883.00 was paid to investors. The Plaintiff testified that he discovered through his investigation that if there were insufficient funds to cover payments to investors from the CAM BOA Account, funds were then transferred from the two Advanced Trading Services, Inc. accounts. COLL. EX. 20. Additional payments made out of the CAM BOA Account include 124 transfers totaling $4,472,300.00 to ATS BOA Account 2127, eighteen transfers totaling $277,500.00 to ATS

---

[5] As evidenced by the Minutes of Meeting dated November 8, 2006, for Smoky Mountain Estate Properties, Inc., the Debtor was added as a "stockholder and associate" with a twenty-five percent share. COLL. EX. 22. As payment for his "initial investment," the Debtor tendered a check to Smoky Mountain Estate Properties, Inc. in the amount of $50,000.00, which was paid from the ATS BOA Account 2127 on October 27, 2006. COLL. EX. 22.

[6] The Plaintiff testified that the University of Tennessee has returned $187,000.00 in donations made by the Debtor.

BOA Account 6196, and $6,500.00 to an account in the name of Advanced Trading Services, Inc. with Citizens National Bank. COLL. EX. 20. Finally, one payment of $2,388.00 was made to the Debtor personally. COLL. EX. 20.[7]

Similarly, the summary for the ATS BankEast Account, which was funded through a loan in the amount of $198,905.00 to Advanced Trading Services, Inc., evidences one transfer to the ATS BOA Account 2127 of $5,000.00 and one transfer to the CAM BOA Account of $10,000.00. COLL. EX. 21. The bulk of the funds paid out of this account, $112,400.00, were paid to Spirit Developers and represented a personal investment of the Debtor, who also received $1,100.00 from this transaction. COLL. EX. 21. The remaining funds, less $3,600.00 to "cash," were paid to contractors for various property investments. COLL. EX. 21.

With respect to the Debtor's personal accounts, Mrs. Bolze, at the Plaintiff's request, provided copies of statements and cancelled checks from January 21, 2005, through November 2008, for the account she and the Debtor maintained at Mountain National Bank, account 3417 (Personal Bank Account), reflecting that Advanced Trading Services, Inc. provided the primary source of incoming deposits during this period, totaling $1,326,900.00 from its accounts at Bank of America. COLL. EX. 23. Additionally, $296,310.62 received from the refinance of real property located at 442 P.A. Proffitt Road, in Gatlinburg, Tennessee (Proffitt Road Property), which was titled in the name of Advanced Trading Services, Inc., was deposited into another personal bank account held by the

---

[7] As testified to by the Plaintiff, it also appears that the Debtor was making payments to Denys Dobbie and his wife, Mary Elizabeth Bryant, for Mr. Dobbie's assistance in locating additional investors. Mr. Dobbie received thirty-seven payments totaling $228,532.24 from ATS BOA Account 2127 and fourteen payments totaling $90,951.00 from the CAM BOA Account, while Ms. Bryant received seventeen payments totaling $30,810.00 and eight payments totaling $19,716.59 from those same accounts, respectively. COLL. EX. 18; COLL. EX. 20.

13

Debtor and Mrs. Bolze at Tennessee State Bank. COLL. EX. 25. As evidenced by these cumulative records, the funds of Advanced Trading Services, Inc. and Centurion Asset Management, Inc. were routinely commingled, along with funds from the Debtor's and Mrs. Bolze's personal accounts, and the Debtor used funds from both companies to pay personal bills and fund his personal investments.

In addition to the commingling of funds between himself, Advanced Trading Services, Inc., and Centurion Asset Management, Inc., the Debtor consistently failed to distinguish whether assets were owned by him personally or by Advanced Trading Services, Inc. and failed to keep the business entities themselves separate from himself and each other, as established, first, by the fact that the offices for Centurion Asset Management, Inc. and Advanced Trading Services, Inc. were located at the Debtor's residence, the Campbell Lead Road Property, which is also the address for the registered agent for Spirit Developers, LLC. *See* Ex. 27. In addition, the Plaintiff established that the Debtor held himself out as the owner of property which was actually owned by one of the corporate entities.

Pursuant to a subpoena, the Plaintiff, in addition to bank account records, also received from BankEast documents which it received from the Debtor during the application process for the loan which funded the ATS BankEast Account and for which the stock of Advanced Trading Services, Inc. was pledged as collateral. *See* COLL. EX. 22. Included among these documents, as material to the issue before the court, are the following (1) Profit & Loss Statements of Advanced Trading Services, Inc. for 2007 and 2008; (2) prepared but not filed Form 1040 U.S. Individual Income Tax Returns for 2006 and 2007 for the Debtor and Kathleen Bolze; (3) personal financial statements for the Debtor and Mrs. Bolze dated September 2008; and (4) a partnership income return for Spirit

Developers, LLC for 2007. COLL. EX. 22. As reflected in the Profit & Loss Statement dated January through December 2007, Advanced Trading Services, Inc. received income in the amount of $246,125.50 from Centurion Asset Management, Inc., and in the Profit & Loss Statement dated January through July 2008, it received income of $77,529.53 from Centurion Asset Management, Inc., although the Plaintiff testified that he was unable to determine what type of income Advanced Trading Services, Inc. ever received from Centurion Asset Management, Inc. since none of the trading was done in the name of Centurion Asset Management, Inc.[8] COLL. EX. 22.

In connection with obtaining the loan from BankEast, the Debtor and Mrs. Bolze also submitted a Personal Financial Statement dated September 10, 2008, disclosing their ownership interest in Advanced Trading Services, Inc., with each listed as owning a 50% interest valued, collectively, at $10,800,000.00. The Debtor did not disclose any interest in Centurion Asset Management, Inc. within this document. COLL. EX. 22. The September 10, 2008 Personal Financial Statement also represents that the Debtor holds 3,870 shares of stock in Mountain National Bank valued at $77,600.00; however, during his investigation, the Plaintiff contacted Mountain National Bank and determined that there were no stock certificates issued in the Debtor's name, although there were 3,619 shares of stock issued in the name of Advanced Trading Company. *See* COLL. EX. 22; COLL. EX. 23. This misrepresentation of the stock ownership was also contained in a Personal Financial Statement dated July 5, 2007, submitted to Tennessee State Bank for a loan made to Advanced Trading Services, Inc. in the amount of $150,000.00 for the purchase of the Proffitt Road Property, in which the Debtor represented that he held ownership of 14,000 shares of stock in

---

[8] The Plaintiff also testified that both Profit & Loss Statements fraudulently reflect that the Advanced Trading Services, Inc. Trading Accounts produced income of $1,452,853.21 and $1,064,069.70, respectively. *See* COLL. EX. 22.

15

Mountain National Bank valued at $410,000.00.[9] COLL. EX. 24. Finally, the 2007 federal tax return for Spirit Developers, LLC, likewise submitted in connection with the BankEast loan, indicates on Schedule K-1 that Advanced Trading Services, Inc. was a 60% partner, a statement which is once again inconsistent with the July 5, 2007 Personal Financial Statement listing the Debtor individually as a 50% partner in Spirit Developers, LLC. *Compare* COLL. EX. 22 *with* COLL. EX. 24.

The fact that the Debtor's and Defendants' financial and business affairs were interchangeable is also established by the fact that the Debtor obligated Advanced Trading Services, Inc. for liabilities of Centurion Asset Management, Inc., as evidenced by a Secured Promissory Note dated December 15, 2008, in the amount of $472,570.00 to Jerard and Carol Muszik, which is secured by a Deed of Trust pledging the Campbell Lead Road Property and the Proffitt Road Property as collateral.[10] Ex. 30

The Plaintiff also introduced into the record insurance binders dated July 26, 2007, and March 17, 2008, which were issued by Atchley-Cox-McCrosky Insurance for the Campbell Lead Road Property and incorporated additional liability insurance for the Proffitt Road Property. *See* COLL. EX. 24. Both of these properties are titled to Advanced Trading Services, Inc., and yet, the insurance policies were to be issued in the names of the Debtor and Mrs. Bolze, individually. COLL. EX. 24. Similarly, the Debtor completed the Application for Service/Delivery for gas service on the Campbell Lead Road Property with Thompson Gas in his own name rather than that of Advanced

---

[9] The July 5, 2007 Personal Financial Statement also references that the Debtor held a 50% ownership in Trading Rooms Technologies, which was receiving payment from the ATS BOA Account 2127. *Compare* COLL. EX. 24 *with* COLL. EX. 18.

[10] The Debtor also executed this Secured Promissory Note, making himself personally liable.

16

Trading Services, Inc. and maintained a contract with ADT Security Services, Inc., in the name Dennis Bolze "dba Centurion Asset Management." Ex. 29; Ex. 35.

Based upon the evidence, the Plaintiff has established that Advanced Trading Services, Inc. and Centurion Asset Management, Inc. are alter-egos of the Debtor. Moreover, the Plaintiff has proved that the Debtor used both corporations as subterfuges for advancing his Ponzi scheme. The record reflects that the Debtor directed investors to send their investments by either check or wire transfer to the Bank of America account in the name of Centurion Asset Management, Inc. *See, e.g.*, EX. 8 (WHALEY DECL. at EX. 1); EX. 10 (GALYON DECL. at EX. 1); EX. 11 (CASON DECL. at COLL. EX. 4). There was, however, no trading account established with the Commodity Futures Trading Commission in the name of Centurion Asset Management, Inc., although two trading accounts were established through Man Securities, Inc. in the name of Advanced Trading Service, Inc. by the Debtor, its Vice President. *See* EX. 6 (TALLARICO DECL.) at ¶¶ 5-6; COLL. EX. 16; COLL. EX. 17. In these documents, it was represented by a letter signed on May 15, 2005, by the Debtor and Kathleen Bolze to Man Securities, Inc., that "[a]ll funds deposited in the trading account represent proprietary funds of the Corporation and do not represent the interest of any other individuals or companies, and that the sole business of the Corporation is running trading seminars[,]" and that Advanced Trading Services, Inc. "does not hold itself out as engaging in the business of investing capital contributions from other participants in the security markets." COLL. EX. 17. Nevertheless, monies received by Centurion Asset Management, Inc. were invested in these accounts, and more than $800,000.00 was lost. EX. 6 (TALLARICO DECL.) at ¶¶ 5-6.

Based upon the foregoing, the court has no difficulty in piercing the corporate veil under Tennessee law and additionally finds that the Plaintiff has proved the necessary elements to pierce the corporate veil under Nevada law as well, which similarly provides that "the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Group, Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). "While the classic alter ego situation involves a creditor reaching the personal assets of a controlling individual to satisfy a corporation's debt, the 'reverse' piercing situation involves a creditor reaching the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual." *Loomis*, 8 P.3d at 846.

> There are three general requirements for application of the alter ego doctrine: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice. It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice.
>
> . . . .
>
> In determining whether a unity of interest exists between the individual and the corporation, courts have looked to factors like co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. These factors may indicate the existence of an alter ego relationship, but are not conclusive. There is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case.

*Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886-87 (Nev. 1987) (internal citations omitted).

In summary, the Plaintiff's Motion for Default Judgment shall be granted, and the assets and liabilities of the Defendants, Advanced Trading Services, Inc. and Centurion Asset Management,

Inc., shall be substantively consolidated with those of the Debtor, effective January 9, 2009, the date the Involuntary Petition was filed against Dennis Bolze.

An order consistent with this Memorandum will be entered.

FILED:  July 23, 2009

                                  BY THE COURT

                                  */s/ RICHARD STAIR, JR.*

                                  RICHARD STAIR, JR.
                                  UNITED STATES BANKRUPTCY JUDGE